UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BILL BARRETT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 09-19 (RJL) |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF THE INTERIOR, *et al.*, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BTU WESTERN RESOURCES, INC., | ) | |
| | ) | |
| Intervenor-Defendant. | ) | |

MEMORANDUM OPINION
(March 11, 2009)

Plaintiff Bill Barrett Corporation ("BBC") has filed suit under the Administrative Procedure Act ("APA") challenging the U.S. Bureau of Land Management's ("BLM") grant of a coal exploration license to BTU Western Resources, Inc. ("BTU"). BBC claims that the exploration license must be set aside because it lacks sufficient stipulations to protect BBC's rights to extract coalbed natural gas ("CBNG") under preexisting licenses should BBC's wells be contaminated by BTU's coal exploration drilling. Presently before the Court is BBC's motion for a preliminary injunction enjoining the government from allowing coal exploration under the license to proceed pending resolution of the

1

case on the merits.[1] Because BBC has failed to establish the requisite likelihood of irreparable harm to warrant a preliminary injunction, its motion is DENIED.[2]

## BACKGROUND

Under the Federal Land Policy Management Act of 1976, it is the United States' policy that management of public lands "be on the basis of multiple use and sustained yield." 43 U.S.C. § 1701(a)(7). Consistent with that policy, BLM regulations provide that the grant of a permit or lease to develop any one mineral on public land "shall not preclude" the issuance of other permits or leases for the development of other minerals on the same land, so long as there exist "suitable stipulations for simultaneous operation." 43 C.F.R. § 3000.7. One such form of multiple use – and the form at issue in this case – is the simultaneous extraction of both natural gas and coal from a resource-rich tract of public land. *See id.* § 3400.1(b).

BBC operates approximately 108 CBNG wells in the "Porcupine Field" in Wyoming's Powder River Basin pursuant to numerous federal oil and gas leases. (Mot. for Prelim. Inj. [Dkt. #3], Ex. A, Tracy Galloway Aff. ¶ 2, Sept. 12, 2008.) Neighboring BBC's CBNG operation is BTU's coal-mining operation, which

---

[1] Plaintiff also seeks identical relief under Section 705 of the APA in the form of a postponement of the effective date of the exploratory license. 5 U.S.C. § 705.

[2] Plaintiff filed the instant motion on January 7, 2009, seeking both a temporary restraining order and a preliminary injunction. ([Dkt. #3].) The Court held an abbreviated hearing later that day, after which the Court issued an order temporarily restraining and enjoining the defendants from allowing coal exploration operations under the license to proceed between that date and January 17, 2009. (Minute Order, Jan. 7, 2009.) The Court subsequently heard full oral argument on January 13, 2009 on whether a preliminary injunction should issue upon the temporary restraining order's lapse.

extracts coal from the North Antelope Rochelle surface mine. In February 2007, BTU submitted an application to BLM for a federal coal exploration license to allow BTU to explore the coal reserves underlying the Porcupine Field and collect certain geologic data. (Defs.' Mem. In Opp. [Dkt. #5], Ex. A, Michael J. Karbs Decl. ¶ 2, Jan. 6, 2009.) Such exploration entails drilling numerous small core holes into the field's coal bed and is a necessary precursor to a competitive bid process for a coal lease, as the data collected enables BLM to meet its responsibility to ensure that the public receives fair market value for the coal.[3] (Karbs Decl. ¶¶ 5-6); 43 C.F.R. § 3422.1(c)(1). BTU sought the exploration license in order to advance its effort to secure a coal lease.

BBC, while ostensibly not objecting to multiple use of the Porcupine Field, claims that exploratory drilling will irreparably harm its CBNG operation. BBC uses a vacuum technique to produce CBNG, employing two compressors that create negative pressure in the coal reservoir. (Galloway Aff. ¶ 2.) The compressors are sensitive to the presence of oxygen in the gas stream, which can render the CBNG unmarketable. If either compressor detects oxygen exceeding 10 parts per million for a period of ten minutes, the compressor will automatically shut down. (*Id.*) To rectify such so-called "oxygen contamination," BBC must vent and flow all of the gas lines leading to the compressor, purging the CBNG in the lines to the atmosphere. (*Id.* ¶ 3.) This is a time consuming and costly

---

[3] In this instance, BLM asserts that it lacks adequate data for fair market valuation of approximately two and one half square miles of the Porcupine Field containing an estimated 169,000,000 tons of coal. (Karbs Decl. ¶ 8.)

procedure, compounded by the loss of the purged CBNG's sale value. (*Id.*) BBC contends that due to the Porcupine Field's geologic makeup, specifically the permeability and porosity of the coal, exploratory drilling will cause oxygen contamination to occur. (Compl. [Dkt. #1] ¶ 22; Pl.'s Mem. In Supp. at 1.)

BBC contacted BLM in October 2007 to notify the agency of its concerns. BBC and BLM thereafter traded multiple letters over the next nine months as BBC provided BLM with additional technical information, at BLM's request. Upon consideration of BBC's submissions and protests, BLM recognized that a risk of oxygen contamination existed, but concluded in a decision issued August 12, 2008 that the risk was too uncertain to warrant denying BTU's application altogether. (Mot. for Prelim. Inj., Ex. B, BLM Decision at 2, 6.) BLM instead crafted a phased drilling approach and stated its expectation that, pursuant to the standard simultaneous-use stipulations to be included in the license, BTU would be obligated to compensate BBC for any verified damage as a result of its exploratory drilling.[4] (*Id.* at 5-6.) Not satisfied, BBC filed an appeal with the Interior Board of Land Appeals ("IBLA"), but the IBLA failed to act within the regulations' allotted time period, rendering BLM's decision on the license effective and final in late October 2008.[5] BLM formally issued BTU the coal exploration license on

---

[4] Under the phased drilling approach, BTU is authorized to drill the ten most important core holes for data collection purposes in a first round of drilling. (BLM Decision at 5-6.) If adverse effects on BBC occur, BTU can then waive or defer drilling the remaining 38 proposed core holes. (*Id.*)

[5] Under the relevant regulations, BBC's notice of appeal and petition for a stay automatically stayed the effectiveness of BLM's decision pending the IBLA's ruling. 43 C.F.R. § 4.21(a)(1). IBLA's failure to act within 45 calendar days after the expiration of

December 30, 2008, and BBC filed the present suit and motion for a preliminary injunction January 7, 2009. BBC's primary contention is that BLM's decision was arbitrary and capricious, an abuse of discretion, not in accordance with law, and in violation of BBC's lease because the exploratory drilling will unreasonably interfere with BBC's CBNG operation and the license's stipulations do not adequately prevent such harm or compensate BBC for any damages incurred if oxygen contamination should occur.[6] (Pl.'s Mem. In Supp. at 9-22.)

## DISCUSSION

### I. Legal Standard

"A preliminary injunction is an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). As recently articulated by the Supreme Court, in order to obtain a preliminary injunction a movant must demonstrate: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter*

---

the time for filing a notice of appeal, however, automatically rendered BLM's decision effective and final. *Id.* § 4.21(a)(3), (b)(4), (c).

[6]   BBC's lease provides: "Lessor reserves the right . . . to authorize future uses upon or in the leased lands, including the approval of easements or rights-of-way. Such uses shall be conditioned so as to prevent unnecessary or unreasonable interference with rights of lessee." (Defs.' Mem. In Opp'n, Ex. 4, Offer to Lease and Lease for Oil and Gas at 2, § 6.) BBC also contends that BLM violated the National Environmental Policy Act and that BLM acted in excess of statutory authority by issuing the license for the express purpose of endowing BTU with negotiating leverage to be used against BBC to reach a reasonable accommodation. (Pl.'s Mem. In Supp. at 22-31.)

*v. Natural Res. Def. Counsel*, 129 S. Ct. 365, 374 (2008); *see also CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1985). While these factors interrelate on a sliding scale, *CityFed Fin. Corp.*, 58 F.3d at 747, the movant must, at a minimum, "demonstrate that irreparable injury is *likely* in the absence of an injunction," *Winter*, 129 S. Ct. at 375 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)) (emphasis in original). Indeed, because "the basis of injunctive relief in the federal courts has always been irreparable harm," a movant's failure to establish irreparable harm is grounds for denying a motion for preliminary injunction without considering the other factors. *CityFed Fin. Corp.*, 58 F.3d at 747 (citation omitted). For the following reasons, the Court finds that BBC's motion fails on this basis.

## II. Irreparable Harm

Our Circuit has set a high standard to establish irreparable harm. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). First, the injury "must be both certain and great; it must be actual and not theoretical." *Id.* (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)). The moving party must show "[t]he injury complained of is of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Id.* Second, the asserted injury must be beyond remediation. As stated by the D.C. Circuit:

> Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay[,] are not enough. The possibility that adequate compensatory or other

> corrective relief will be available at a later date, in the ordinary course of litigation[,] weighs heavily against a claim of irreparable harm.

*Wis. Gas Co.*, 758 F.2d at 674 (quoting *Va. Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958)). Indeed, it is well-settled that monetary loss constitutes irreparable harm "only where the loss threatens the very existence of the movant's business." *Id.*

To support its position that oxygen contamination is likely to occur, BBC points to three pieces of evidence: its experiences with oxygen contamination in connection with the clean-out of CBNG wells at the nearby Pronghorn Field, (Mot. for Prelim. Inj., Ex. A, Dec. 12, 2007 Letter at 1-5); oxygen contamination that occurred as a result of the drilling of a water well in the vicinity of the Porcupine Field, (*Id.*, Apr. 1, 2008 Protest Letter at 19-21); and a three-page technical report prepared for BBC by petroleum engineer J. Craig Creel (the "Creel Report"), which analyzed the water well incident and concluded that "[i]f any of the ten proposed core holes are drilled, oxygen will be introduced into the producing coal seam reservoir and subsequently, into the BBC gas gathering system," (*Id.*, Minimum Safe Core Hole Drilling Distance Report at 3). BLM, however, determined that the Pronghorn Field evidence, while somewhat analogous, entailed significantly different field conditions. (BLM Decision at 2.) BLM similarly determined that the water well incident also entailed significantly different circumstances, including that the diameter of the water well was much bigger than the diameter of exploratory core holes, lending the evidence and the

Creel Report little predictive value. (BLM Decision at 3; Mot. for Prelim. Inj., Ex. A, BLM Review of J. Craig Creel Report at 1-4, July 22, 2008.) Finally, BLM and BTU note that the State of Wyoming, in seeking leave to participate in BBC's IBLA appeal, stated that it was "unaware of any harm of the nature [BBC] asserts ever occurring in Wyoming," a conclusion consistent with BLM's understanding based on its own investigation. (Defs.' Mem. In Opp., Ex. 7, Wy. Mot. for Leave to File Amicus Br. ¶ 1, Sept. 25, 2008; BLM Decision at 2-3.)

The Court finds that the weight of the evidence is, at best, inconclusive as to whether oxygen contamination is likely to occur. While BBC's evidence establishes oxygen contamination is a *possibility*, BLM, in its expert judgment, determined, after evaluating BBC's evidence and inquiring into the experiences of similarly situated CBNG operators, that the risk of oxygen contamination "does not appear to be proven with any certainty." (BLM Decision at 2-3.) This Court, of course, must give due deference to BLM in matters within the agency's technical expertise, particularly where predictive judgments are at issue. *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1000 (D.C. Cir. 2008) ("The rationale for deference is particularly strong when the [agency] is evaluating scientific data within its technical expertise[.]" (citation omitted)); *BNSF Ry. Co. v. Surface Transp. Bd.*, 526 F.3d 770, 781 (D.C. Cir. 2008) ("It is well established that an agency's predictive judgments about areas that are within the agency's field of discretion and expertise are entitled to particularly deferential review, so long as they are reasonable." (citation omitted)). Giving BLM that deference, this Court is

not persuaded that BLM's judgment was in error. Thus, in the absence of new evidence at this stage establishing that the harm BBC alleges is *likely* to occur, BBC has failed to establish the requisite risk of irreparable harm to warrant a preliminary injunction.

Finally, it bears noting that BBC has also has failed to establish that the harm it contends will occur is of an irreparable nature. *See Wis. Gas Co.*, 758 F.2d at 674. BBC contends that oxygen contamination caused by exploratory drilling "will impose significant losses upon BBC, both in terms of costs of labor and the costs of lost and delayed production and associated revenues, and also in terms of the irrevocable loss of CBNG natural resource that will have to be vented to the atmosphere before production can resume." (Pl.'s Mem. In Supp. at 33.) Assuming so, however, BBC has not established that the exploratory drilling will irreparably destroy BBC's ability to produce CBNG. Indeed, BBC has been able to return contaminated wells to production in just over nine days. (Mot. for Prelim. Inj., Ex. A, May 9, 2008 Letter at 3.) Moreover, BBC has not established that corrective or compensatory relief is otherwise unavailable. Despite BBC's attempt to shift the burden to the defendants, it is BBC's burden to establish, "by a clear showing," *Cobell*, 391 F.3d at 258, that no adequate remedy at law exists, *Wis. Gas Co.*, 758 F.2d at 674. While BBC cannot pursue compensatory damages under the APA, 5 U.S.C. § 702, it may, as it itself has acknowledged, be able to pursue both a breach of contract claim and a takings claim against the United States for unreasonably interfering with BLM's existing leases, (Mot. for Prelim.

9

Inj., Ex A, Apr. 1, 2008 Letter at 10 (citing *Del Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358 (Fed. Cir. 1998))). *See also Amber Res. Co. v. United States*, 538 F.3d 1358, 1378 (Fed. Cir. 2008) (affirming Court of Federal Claim's jurisdiction over contract-based claims arising from mineral leases). Accordingly, because the injury BBC asserts is of a monetary nature and because BBC has failed to establish by a clear showing that it has no other adequate remedy, BBC's motion for a preliminary injunction must be denied on this basis as well.[7] An appropriate Order will issue with this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge

---

[7] BBC's failure to establish irreparable harm is also fatal to BBC's request for relief under Section 705 of the APA, which grants a reviewing court authority to postpone the effective date of an agency action "to the extent necessary to prevent irreparable injury." 5 U.S.C. § 705.